## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
                    *Plaintiff*,

           **v.**                    Case No. **6:16-cr-10141-EFM-01**

**CURTIS WAYNE ALLEN,**
                    *Defendant.*

## MOTION FOR ORDER TO HAVE PROSPECTIVE JURORS SUMMONED
## FROM MULTIPLE JURY DIVISIONS

Mr. Curtis Allen, through undersigned counsel, and joined by Mr. Patrick Stein and Mr. Gavin Wright, asks this Court to order the Clerk of Court Jury Coordinator to issue summonses to prospective jurors from both the Wichita-Hutchinson and Dodge City jury divisions, proportionate to the size of the qualified jury wheel from each division, to report for service on the petit jury for this trial. All of the alleged events occurred in Western Kansas in the Dodge City jury division. Yet, the citizens who live in this jury division are systematically excluded from serving on a federal petit jury. Issuing summonses to prospective jurors from both jury divisions will ensure the defendants are afforded their Sixth Amendment and statutory right to juries that represent a fair cross-section of the community, and ensure that the

residents of the District of Kansas are afforded the civil right to serve as jurors.

## Legal Authority and Analysis

1.   *The Sixth Amendment and the Jury Act provide for a jury trial before a fair cross section of the community.*

The Sixth Amendment requires that the impartial jury must be drawn from "the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."[1] "[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community" as "an essential component of the Sixth Amendment right to a jury trial."[2]

The Sixth Amendment also imposes a geographic limitation on the prosecution of crimes, and the origins of the geographic limitation are found in English common law.  For example, the right to be tried by a jury from a particular geographical region, or vicinage, came in part from the practice established in England by the early 1600's, and in part as a reaction to the efforts of the English Crown during the 1760's to bring colonists to London in order to try them for treason.[3] Vicinage "means neighborhood, and 'vicinage

---

[1] U.S. Const. amend. VI.

[2] *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975).

[3] *Zicarelli v. Gray*, 543 F.2d 466, 468 (3d Cir. 1976).

of the jury' meant jury of the neighborhood or, in medieval England, jury of the county."[4] The original version of the Sixth Amendment drafted by James Madison and introduced in the House of Representatives incorporated the term "vicinage," but the term does not appear in the final version of the Sixth Amendment.[5] Rather, the Founders settled on the constitutional right to be tried in the "[s]tate and district wherein the crime shall have been committed."[6] And "[a] jury selection system violates that right if the system does not draw its jury members from a fair cross section of the community."[7]

The modern judicial district is borne from statute. The Jury Selection and Service Act of 1968 ("Jury Act")[8] divides federal judicial districts and imposes the minimal requirements on judicial districts for the upholding the rights of defendants and prospective jurors. For criminal defendants, who are entitled to trial by jury, they "shall have the right to grand and petit juries

---

[4] *Williams v. Florida*, 399 U.S. 78, 94 n. 35 (1970).

[5] *See id.* at 93 ("pending and after the adoption of the Constitution, fears were expressed that Article III's provision failed to preserve the common-law right to be tried by a 'jury of the vicinage.'").

[6] U.S. Const. amend. VI.

[7] *United States v. Shinault*, 147 F.3d 1266, 1270 (10th Cir. 1998).

[8] 28 U.S.C. § 1861, *et. seq.*

selected at random from a fair cross section of the community in the district or division wherein the court convenes."[9]

The Jury Act also establishes a separate right for prospective jurors, such that "all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose."[10] The Jury Act also prohibits discrimination in jury selection, by stating that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States or in the Court of International Trade on account of race, color, religion, sex, national origin, or economic status."[11]

> 2.  *The current practice for federal trials in Wichita systematically excludes prospective jurors from the Dodge City jury division from serving on petit juries.*

In the District of Kansas, Local Rule 38.1[12] attempts to effectuate the statutory requirements of the Jury Act. The Rule establishes six jury divisions, designated by county.[13] The clerk of court is authorized to manage

---

[9] 28 U.S.C. § 1861.

[10] *Id.*

[11] 28 U.S.C. § 1862.

[12] D. Kan. Rule 38.1 (Random Selection of Grand and Petit Jurors).

[13] *Id.* at para. (a). The six jury divisions are: (1) Kansas City-Leavenworth; (2) Wichita-Hutchinson; (3) Topeka; (4) Dodge City; (5) Fort Scott; and (6) Salina.

jury selection[14] and selects at random the names of prospective grand and petit jurors from the official lists of registered voters in each county in Kansas.[15] Each county must be substantially proportionately represented in the "master jury wheel."[16] The Rule establishes the minimum number of names that must be provided with a master jury wheel to be placed for each division.[17] The Rule does not, however, vest discretion with the jury coordinator to purposefully exclude otherwise qualified jurors from being part of the master jury wheel.

From the master jury wheel, the clerk must maintain a *qualified* jury wheel for each division,[18] which is established by a random drawing from each master jury wheel[19] and the mailing of a return of a questionnaire[20]

---

[14] *Id.* at para. (c).

[15] *Id.* at para (d).

[16] *Id.* at para (e)(3); *see also* 28 U.S.C. § 1863.

[17] *Id.* at para. (f). The minimum number of names for the master jury wheel for each division is as follows: (1) Kansas City-Leavenworth – 7, 500 names; (2) Wichita-Hutchinson – 7,000 names; (3) Topeka – 5,000 names; (4) Dodge City – 1,000 names; (5) Fort Scott – 1,000 names; and (6) Salina – 1,000 names.

[18] *Id.* at para. (h)(1).

[19] *Id.* at para. (g)(1)(A).

[20] *Id.* at para. (g)(1)(D).

from the persons selected. Assignment of prospective jurors to petit or grand jury panels is then made from the qualified jury wheel for each division.[21]

For a grand jury, the Rule provides that separate panels must be established by grouping jury divisions at locations where court is held.[22] For grand juries held in Wichita, this is accomplished by summonsing prospective jurors from the qualified jury wheels from Wichita-Hutchinson and Dodge City divisions.[23] The Rule does not make the same or similar grouping by division for petit juries and is silent about combining any jury divisions for purposes of establishing a petit jury panel.[24]

The jury coordinator briefly explained at a status conference held in this case on November 16, 2017, that the clerk does not issue summonses to prospective jurors from the Dodge City qualified jury wheel to serve on petit

---

[21] *Id*. at para. (h)(6).

[22] *Id*. at para. (h)(6)(B).

[23] *Id*. at (h)(6)(B)(iii).

The **Wichita-Hutchinson jury division** is made up of the following counties: Butler, Cowley, Harper, Harvey, Kingman, Marion, McPherson, Reno, Rice, Sedgwick, and Sumner.

The **Dodge City jury division** is made up of the following counties: Barber, Barton, Clark, Comanche, Edwards, Finney, Ford, Grant, Gray, Greeley, Hamilton, Haskell, Hodgeman, Kearney, Kiowa, Lane, Meade, Morton, Ness, Pawnee, Pratt, Rush, Scott, Seward, Stafford, Stanton, Stevens, and Wichita.

[24] *Id*. at (h)(6)(A).

juries in Wichita but only issues summons to prospective jurors from the Wichita-Hutchinson jury division.[25] In other words, citizens who live in a county within the Dodge City jury division, who are otherwise qualified to serve on a petit jury, are never issued a summons to do so.

3.   *The systematic exclusion of prospective jurors from the Dodge City jury division discriminates against more rural, conservative jurors.*

County voter registration lists are the total pool of persons who may serve on a jury in the District of Kansas and thus represent the "cross section" of the citizens residing within the District.[26] Because all of the prospective jurors in this case will be registered voters, voter registration is the relevant data from which the defense can demonstrate the differences between the divisions within the District of Kansas. As noted, under the Local Rule, the grand jury panels are grouped by combining two jury divisions by geography, or by county of residence; the same grouping is not done for petit juries. For purposes of this motion and the relief requested, Mr. Allen compares the two jury divisions that are combined for grand juries: the Wichita-Hutchinson jury division and the Dodge City jury division.

---

[25] Counsel confirmed this fact following the hearing.

[26] 28 U.S.C. § 1863; D. Kan. Rule 38.1(d).

First, the Wichita-Hutchinson jury division encompasses counties with a more urban population than the Dodge City jury division. Even passing knowledge of the State of Kansas confirms this to be true – the counties in western Kansas that encompass the Dodge City jury division are more rural. Voter registration numbers likewise show that more people are registered to vote in the Wichita-Hutchinson jury division than the Dodge City jury division. According to the State of Kansas Secretary of State's Office, 445,434 persons were registered to vote who live in the Wichita-Hutchinson jury division and 113,896 persons were registered to vote who live in the Dodge City jury division.[27]  By systematically excluding the Dodge City jury division from serving on the jury for this case, the court is excluding from jury service persons who are more likely to live in rural areas of Kansas.

Second, in modern America, the distinction between "liberals" and "conservatives" is generally considered to be a difference between the two major political parties – Democrats as "liberals" and Republicans as "conservatives."  A political difference between the two parties also extends to their respective ideologies regarding the appropriate size and power of the

---

[27] This voter registration data was official as of August 1, 2015, the last date in which official voter registration data was certified by the Secretary of State for all counties in Kansas. *See* http://www.kssos.org/elections/elections_registration_voterreg.asp (last visited December 8, 2017).

federal government and the individual rights of its citizens.  This case is uniquely political because much of the anticipated evidence will center around, and was in reaction to, the 2016 Presidential election. Additionally, this case will require the jury to evaluate and weigh evidence regarding whether the alleged conduct constitutes the crimes charged or whether it was constitutionally protected speech, assembly, and petition,[28] and/or the right to bear arms.[29]

According to the Kansas Secretary of State's Office, the following charts represent the differences in voter registration in August 2015 by political party in the two jury divisions within the District of Kansas that make up the same grand jury pool:[30]

|  | Total # of Registered Voters | Democrats | Republicans | Libertarian | Unaffiliated |
|---|---|---|---|---|---|
| Wichita-Hutchinson | 445,434 | 98,815 (22.18%) | 197,579 (44.36%) | 3,381 (.76%) | 145,659 (32.7%) |
| Dodge City | 113,896 | 19,672 (17.27%) | 63,823 (56.04%) | 692 (.61%) | 29,709 (26.08%) |
| TOTAL | 559,330 |  |  |  |  |

---

[28] U.S. Const. amend. I.

[29] U.S. Const. amend. II.

[30] *See* Office of the Kansas Secretary of State, Voter Registration and Party Affiliation, *available at*:
http://www.kssos.org/elections/elections_registration_voterreg.asp (last visited, December 8, 2017).

The data shows that for every prospective juror who lives in a county within the Wichita-Hutchinson jury division who is a registered Democrat, there are two prospective jurors who are registered as a Republican. But for every prospective juror who lives in a county within the Dodge City jury division who is registered Democrat, there are 3.24 registered Republicans. In other words, there is a far greater percentage of jurors who live in the Dodge City jury division who affiliate with a more "conservative" political party.

The political difference between the two jury divisions is greater when a comparison is made as to how the voters in these Kansas counties actually voted in the 2016 Presidential election. Again, this is particularly relevant to this case because the alleged conspiracies occurred during the time of, and in the context of, that election.

According to the Kansas Secretary of State, the official results of the 2016 general election for President of the United States, by county were as follows for the two jury divisions:[31]

|  | Total # of Voters | Clinton (D) | Trump (R) | Johnson (L) |
|---|---|---|---|---|
| Wichita-Hutchinson | 297,343 | 99,849 (33.58%) | 182,776 (61.47%) | 14,718 (4.95%) |
| Dodge City | 68,919 | 14,319 (20.78%) | 52,059 (75.54%) | 2,541 (3.69%) |

In the Wichita-Hutchinson jury division, President Trump won the vote by 27.89 percentage-points over Secretary Clinton. In the Dodge City jury division, President Trump won by 54.76 percentage-points over Secretary Clinton. Stated another way, a prospective juror who lives in a county within the Dodge City jury division is twice as likely to be a Trump voter than the prospective juror who lives in a county within the Wichita-Hutchinson jury division.

The review of voter registration data proves that a jury pool that systematically excludes jurors from the Dodge City jury division results in exclusion of a disproportionate portion of residents holding certain

---

[31] *See* Office of the Kansas Secretary of State, Election Statistics*, available at:* http://www.kssos.org/elections/elections_statistics.html (last visited December 8, 2017). This chart excludes votes for candidates who belong to parties that were not included in the Kansas Secretary of State voter registration data and for write-in candidates. These votes were de minimus and the raw data of the votes excluded is not significant enough to skew or impact the reliability of the statistical analysis.

11

conservative political beliefs. The current practice thus wholly discriminates against citizens of the twenty-eight counties who make up the Dodge City jury division who have more conservative political views.

4.    *Mr. Allen is entitled to have the citizens of the Dodge County jury division serve on his jury.*

Mr. Allen has a constitutional and statutory right to ensure the petit jury panel selection does not systematically exclude persons who are otherwise qualified to serve on a jury. In order to establish a prima facie violation of the fair-cross-section requirement, Mr. Allen must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[32]

The first and third factors weigh in Mr. Allen's favor. The group excluded from petit jury service is an entire jury division which has, as a matter of policy, been systematically excluded from service on a petit jury in the District of Kansas. Thus, citizens from twenty-eight Kansas counties, who

---

[32] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

live in more rural areas and are more politically conservative, have no chance to serve on a federal petit jury.

Regarding the second factor, the qualified jury pool for petit jury service has no representation from the Dodge City jury vision so the selection process is not fair and reasonable. Although courts have held that a petit jury may be drawn constitutionally from only one division and not the whole district,[33] it does not follow that the clerk has discretion to systematically exclude an entire jury division from petit jury service. Indeed, discrimination through systematic exclusion of a sector of otherwise qualified venire persons violates the Equal Protection Clause of the Fifth Amendment, the Sixth Amendment[34] and the Jury Act.[35] The exclusion of an entire jury division encompasses all identifiable or distinctive community groups within those particular Kansas counties and results in politically conservative jurors being

---

[33] *United States v. Herbert*, 698 F.2d 981, 984 (9th Cir. 1983) (citing *Ruthenberg v. United States*, 245 U.S. 480 (1918))

[34] *Powers v. Ohio,* 499 U.S. 400, 404 (1991) ("Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's] own race,' he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria.").

[35] 28 U.S.C. § 1862 ("No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States or in the Court of International Trade on account of race, color, religion, sex, national origin, or economic status.").

under-represented in the petit jury pool for federal criminal trials held in Wichita.

The Tenth Circuit has also stated that "the partitioning of a district into jury divisions is sanctioned by the statute," under the Jury Act.[36] But "evidence that some cognizable group has been systematically excluded by 'gerrymandering' the division lines" would make the use of a jury division unconstitutional.[37]

That is exactly what is occurring here. Although an entire jury division is not a "cognizable group" based upon traditional criteria listed in the statute (race, color, religion, sex, national origin, or economic status),[38] the current practice is clear political gerrymandering[39] by drawing jury division lines by county, grouping those jury divisions for purposes of service on grand

---

[36] *United States v. Test*, 550 F.2d 577, 594 (10th Cir. 1976).

[37] *Id.*

[38] 28 U.S.C. § 1862.

[39] *Shaw v. Reno*, 509 U.S. 630, 650 (1993) (holding political gerrymanders to be justiciable under the Equal Protection Clause) (citations omitted); *see also Cooper v. Harris*, 137 S. Ct. 1455, 1465 (U.S. 2017) ("Rather, that district was the result of a *political* gerrymander—an effort to engineer, mostly 'without regard to race,' a safe Democratic seat.").

juries, and then excluding an entire jury division from petit jury service. This results in a more politically diluted petit jury pool.[40]

"Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial."[41] Competence to serve as a juror should not be based upon which county the registered voter happens to reside in Kansas.

Finally, nothing precludes the court from drawing jurors from the qualified jury wheels from the two jury districts when the unique circumstances of the case and fundamental fairness require it.[42] The statute[43] endorses Mr. Allen's request, as does Federal Rules of Criminal Procedure,[44]

---

[40] 9 AM. JUR. PROOF OF FACTS 2d 407 (Originally published in 1976) ("While cases in the past often involved blatant discrimination with total or nearly total exclusion of one or more groups, at the present time a jury discrimination case is more likely to involve substantial underrepresentation of the group or groups, achieved by subtle means.").

[41] *Batson v. Kentucky*, 476 U.S. 79, 87 (1991).

[42] Although it is not the issue specifically presented in this motion, the defense acknowledges that three Circuits have held that there is no right to a trial held in a particular division, even the division where the crime occurred. *See, e.g., Zicarelli*, 543 F.2d at 479; *United States v. Mase*, 556 F.2d 671, 675 (2d Cir. 1977), cert. denied, 435 U.S. 916, (1978); *United States v. James*, 528 F.2d 999, 1021 (5th Cir. 1976), cert. denied, 429 U.S. 959, (1976).

[43] 28 U.S.C. § 1861 ("fair cross section of the community in the district or division").

[44] Fed. R. Crim P. 18 contemplates several factors regarding the *place* of trial (convenience of the defendant, any victim, and the witnesses), but it is otherwise silent regarding the places from which prospective jurors may be drawn.

and the District of Kansas Local Rule.[45] Thus, there is no legal impediment to prevent the Court from issuing summonses to prospective jurors just as it does for grand juries held in Wichita, from both the Wichita-Hutchinson and Dodge City jury divisions.

5. *Mr. Allen has standing to challenge the systematic exclusion as an Equal Protection violation on behalf of the excluded jurors.*

Mr. Allen has standing to raise the third-party equal protection claims of jurors systematically excluded from service on a petit jury,[46] and he does so here. In determining whether to provide relief, the Court can thus consider both Mr. Allen's right to a jury composed of a fair cross section of the community and the equal protection rights of prospective jurors from the Dodge City jury division.

"The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community."[47] In other words, discrimination through systematic exclusion of prospective jurors impacts both Mr. Allen's right to be tried before a fair cross

---

[45] D. Kan. Rule 38.1(h)(6).

[46] *Powers*, 499 U.S. at 415 ("We conclude that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race.").

[47] *Batson*, 476 U.S. at 87.

section of the community and the prospective jurors from the Dodge City jury division who never get the opportunity to serve on a petit jury.[48]

"The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system."[49] As the Supreme Court said, "[t]he jury system postulates a conscious duty of participation in the machinery of justice . . . One of its greatest benefits is in the security it gives the people that they, as jurors actual or possible, being part of the judicial system of the country can prevent its arbitrary use or abuse."[50]

As Alexis de Tocqueville remarked:

[T]he institution of the jury raises the people itself, or at least a class of citizens, to the bench of judicial authority [and] invests the

---

[48] The harm in systematically excluding prospective jurors particularly acute in this case because it has generated substantial pretrial publicity. *See, e.g.*, Press Release, U.S. DEPARTMENT OF JUSTICE, *Three Kansas Men Charged with Plotting a Bombing Attack Targeting the Local Somali Immigrant Community* (Oct. 14, 2016), *available at*: https://www.justice.gov/opa/pr/three-kansas-men-charged-plotting-bombing-attack-targeting-local-somali-immigrant-community; Oliver Morrison, *A helpful neighbor. A proud father. A farmer's kid. And, the FBI says, terrorists*, THE WICHITA EAGLE, October 26, 2016, *available at*: http://www.kansas.com/news/local/crime/article109081977.html; Ryan J. Reilly, *Crusader Militiaman Charged in Terror Plot Targeting Muslims Will Be Jailed Until Trial*, THE HUFFINGTON POST, October 20, 2017, *available at*: https://www.huffingtonpost.com/entry/kansas-muslim-terror-plot-crusaders_us_59ea4d85e4b0a484d0632a11.

[49] *Powers,* 499 U.S. at 406.

[50] *Balzac v. Porto Rico,* 258 U.S. 298, 310 (1922).

17

people, or that class of citizens, with the direction of society. … The jury … invests each citizen with a kind of magistracy; it makes them all feel the duties which they are bound to discharge towards society; and the part which they take in the Government. By obliging men to turn their attention to affairs which are not exclusively their own, it rubs off that individual egotism which is the rust of society. …I do not know whether the jury is useful to those who are in litigation; but I am certain it is highly beneficial to those who decide the litigation; and I look upon it as one of the most efficacious means for the education of the people which society can employ.[51]

Citizens who live in counties that encompass the Dodge City jury division are not being given the opportunity to participate in the administration of justice by serving on a petit jury. They are being denied the opportunity to fulfill their "conscious duty of participation in the machinery

---

[51] *Powers*, 499 U.S. at 407 (quoting 1 DEMOCRACY IN AMERICA 334-337 (Schocken 1st ed. 1961)).

18

of justice," or to be invested in "a kind of magistracy." They are being denied equal protection[52] under the law.[53]

## Conclusion

Mr. Allen is on trial for a conspiracy that is alleged to have been formed and carried out in Western Kansas. Yet, due to a systematic exclusion of an entire jury division, he will not be tried before any jurors from that part of the State. This discriminatory practice excludes rural and conservative jurors. This discriminatory practice violates Mr. Allen's Sixth Amendment right, the statutory requirements of the Jury Act, and citizens' right to serve on petit juries and equal protection under the law. The Court should order the clerk issue summonses to prospective jurors from both the Wichita-Hutchinson and Dodge City jury divisions to serve on the petit jury for this trial.

---

[52] U.S. Const. amend. V; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1955) ("But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive.").

[53] *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303 (1880) (holding that State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded); *Batson*, 476 U.S. at 89 (holding that "State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause.").

Respectfully submitted,

s/Melody Brannon
Melody Brannon, #17612
Federal Public Defender for the
District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785/232-9828
Fax: 785/232-9886
melody_brannon@fd.org


s/ Rich Federico
Rich Federico, #22111
Staff Attorney (R&W)
Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
rich_federico@fd.org

**CERTIFIFCATE OF SERVICE**

I hereby certify that on December 8, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.


s/ Rich Federico
Rich Federico